CASE No. 917.

ANDERSON & CO. v. HOLMES & DURHAM.

1. A mortgage of personal property connected with the business of a turpentine distillery, containing no agreement that a suspension of operations should be regarded as a breach of the condition of the mortgage, and the proof of a suspension not being clear, there was no error in the refusal of the Circuit judge to charge "that the suspension of operations by the mortgagor was a breach of the mortgage."

2. Under a mortgage of personal property given to secure the payment of moneys and interest, the mortgagee has no right to the possession of the property until the debt is due, notwithstanding that to the concluding clause, that the mortgagor shall retain possession until default, &c., are superadded the words, "but always at the will of the mortgagee."

3. The general intention to be collected from the whole context and every part of a written instrument, is always to be preferred to the particular expression.

4. A firm contracting, afterwards made a change in its membership, and informed the other contracting party of such change, who made no complaint, and the new firm brought an action for a subsequent breach of the contract—*Held*, that to the defendant's request to charge that the new firm could not bring action for this breach of the contract, the presiding judge committed no error in adding "unless the contract was renewed with the new firm."

Before HUDSON, J., Williamsburg, November, 1879.

The opinion fully states the case. The bond and mortgage are very long, filling eight pages of the brief; but so much of them as are material to the errors assigned are stated by the court.

*Messrs. Dozier & Gilland,* for appellants.

*Mr. J. A. Kelly,* contra.

September 6th, 1880.   The opinion of the court was delivered by

McGowan, A. J.   In January, 1879, James Anderson & Co., then consisting of James Anderson and Middleton Kelly, entered into a covenant with James H. Parker & Co., of Charleston, in which, among other things, it was agreed that James H. Parker & Co. should make advances to James Anderson & Co. in their business of raising crops of crude turpentine, rosin and spirits of turpentine, and to accept drafts for them to a certain amount, payable January 1st, 1880; and the said James Anderson & Co. agreed to send, consign, ship and deliver to the said Parker & Co., in Charleston, all the crude turpentine already made by them, or to be made and owned by them, to be sold on commission, &c.   At the same time the said Anderson & Co. executed to Parker & Co., to secure the performance of their engagements and the payment of the money to be advanced under the arrangement, a mortgage of the following property, viz.: " One still, with all the fixtures and appurtenances thereto belonging, hacks, dippers, glue pots, etc.; also, all barrels, barrel staves, etc.; also, two dark horse mules; also, one wagon, and all that stock of goods, wares and merchandise."

After some transactions under the arrangement, on March 25th, Parker & Co. assigned the covenant and mortgage to Holmes & Durham, factors and commission merchants of Charleston.   May 7th, Kelly, of the firm of James Anderson & Co., sold his interest to Elijah T. Finklea, who became a partner.   August 15th, Louis Jacobs and Thomas Murphy, defendants, in their official capacity as sheriff and deputy sheriff, of Williamsburg county, seized the still and fixtures under some

proceeding for claim and delivery instituted by Holmes & Durham. This proceeding is still pending. The said Jacobs and Murphy, under a power of attorney from Holmes & Durham, a few days after they took the still, seized the wagon and mules included in the mortgage and turned them over to Holmes & Durham.

In September the plaintiffs brought this action for damages for breach of contract for refusing to make advances and for the alleged unlawful seizure of their property, as described above, by which their business was broken up and their credit ruined, etc.

The jury found a verdict for plaintiffs for $325. The defendants made a motion for a new trial, which was refused, and they now appeal to this court upon grounds which will be separately considered. It seems that another action is pending between these parties, in which the defendants in this case are plaintiffs, and that they have had the still and fixtures delivered to them, valued at $———, besides the wagon and mules seized. This produces some confusion; but the only matter before us is the alleged errors in the charge of the Circuit judge.

*The first exception.* The debt secured by the mortgage was not due until January, 1880, and the defendants seized the mortgaged property in August, prior to the time indicated. But it is insisted " that the suspension of operations by the plaintiffs was a breach of the mortgage, and that the defendants then became entitled to the possession of the mortgaged property, and the judge should have so charged." The bond and mortgage are very long, and contain mutual covenants of the parties, of which it will only be necessary to refer to such as affect the issues made. Each party alleges failure to perform on the part of the other. They do not, however, contain any provision that the condition should be regarded as broken upon the suspension of operations by the plaintiffs. On the contrary, there is an agreement that the plaintiffs shall remain in possession until condition broken. If suspension worked that effect, it must have been by operation of law against the terms of the mortgage. But this view proceeds on the ground that there was a suspension. The testimony is not clear that the plaintiffs had voluntarily

turned over the still and suspended operations.   We see no error in the judge refusing to charge as requested.

*The second exception* objects to the charge : " That unless the mortgagors assented to the delivery, and voluntarily turned over the mules and wagon to the defendants, they were not entitled to the possession until 1880." It is claimed that by the terms of the mortgage itself, the title to the property, on the part of the mortgagees, was not postponed until the debt, secured, was due and payable and default made in payment, but that it was in them from the beginning.

There are two distinct clauses in the mortgage.   The first is in these words : " And it is hereby declared, by and between the parties, that at any time and upon default of the said James Anderson & Co., in the keeping and performance of the agreements to be kept and performed by them in the payment of the moneys and interest according to the true intent and meaning of the condition thereof, then and in such case it may be lawful for the said J. H. Parker & Co. to seize and sell," etc.   At another place are these words : " And it is further agreed that the said James Anderson & Co. are to hold and enjoy the possession of said mortgaged property until default as aforesaid, or any attempt to levy, attach, or in any way dispose of or remove any of the property herein mortgaged, *but always at the will of J. H. Parker & Co.*"

The defendants insist that the last clause controls the whole instrument, and that the mortgagees could lawfully seize and sell at any time.   If such were the intention of the parties, the whole previous provision as to default was entirely unnecessary. The whole character of the instrument would be changed, and it would not be a mortgage but a conveyance absolute.   The intention of the parties to make a mortgage is clear.   The object of construction is to ascertain what the parties meant by the terms and expressions used, and where the intent can be clearly and distinctly ascertained it will prevail, not only in cases in which it is not fully and clearly expressed, but even when it contradicts particular terms of the agreement.   The general intention, to be collected from the whole context and every part of a written instrument, is always to be preferred to the particular

expression.   *Addison on Cont.* 845;   1 *Wait's Act. & Def.* 116; *Washburn* v. *Gould*, 3 *Story* 122; *Chicago* v. *Sheldon*, 9 *Wall.* 50.   We find no error in the charge excepted to.

*The third exception* is because the judge refused to charge, when requested, " that if Kelly had sold to Finklea before the taking of the property, this was a dissolution of the firm of James Anderson & Co., the parties who made the contract with defendants, and, therefore, the plaintiffs cannot recover." The judge did charge as requested, but added, " unless the contract was renewed with the new firm."

The partnership of James Anderson & Co. consisted of two persons, James Anderson and Middleton Kelly.   James Anderson never left it, but it seems that Kelly sold his interest to one Finklea, who thereby became a member.   The property of the concern was never sold or removed.   The style of the firm remained the same—James Anderson & Co.   The defendants, Holmes & Durham, were informed by letter of the change shortly after it occurred in May, and at that time they made no complaint on that ground.   It was left to the jury to say whether they accepted Finklea in the place of Kelly.   We can see no error of the judge upon this subject, so far, at least, as the defendants are concerned.

The appeal must be dismissed, and it is so ordered.

WILLARD, C. J., and McIVER, A. J., concurred.