OWENSBORO, KENTUCKY, *v.* OWENSBORO WATER WORKS COMPANY OF OWENSBORO, KENTUCKY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF KENTUCKY.

No. 79. Argued November 8, 1916.—Decided March 6, 1917.

A city granted to a water company a franchise to construct and operate water works, using the streets. The ordinance defined the grant as made "for the duration of the said Company" (the grantee), but elsewhere limited the term expressly to twenty-five years from the passage of the ordinance; which also contained a contract for the same period providing that, if, at the city's request, the company

should extend its pipes "during the said term of twenty-five years," the city would rent hydrants thereon "for the unexpired term of said franchise." Some years later, the city granted a similar, substitute franchise to a second company, successor to the first with the city's consent, by an ordinance defining the franchise term as "for and during the existence" of the second company, and recognizing the latter as the successor of the first company in respect of the contract for hydrant rental "as fully as if such existing contract had been originally made" with the second company "without the inter-vention" of the first. By the law of its creation, the life of the second company was twenty-five years primarily, with the right (reserved in its articles) to prolong the term by twenty-five year extensions.

*Held:* (1) That the life of the second franchise was not limited to twenty-five years, but was intended to endure while the corporate life of the grantee endured by extension beyond that period.

(2) The fact that the first franchise was expressly limited to twenty-five years while the second was granted for "the existence of the corporation" was evidence confirming this construction.

(3) Respecting the contract concerning hydrants, the second company became successor of the first only for the unexpired term of that contract.

(4) That later ordinances of the city requesting pipe line extensions and declaring that the city thereby rented the hydrants along such extensions "for the unexpired term of the franchises of the said Water Company," and compliance by the second company with the requests so made upon it, did not import a recognition by the parties that the franchise of that company was for a definite, known term not to be enlarged by extension of its corporate existence, but were referable only to the hydrant contract and its unexpired term—a conclusion which was corroborated by the action of the parties in ceasing to collect and pay rent for such hydrants when that term expired.

The question being whether a franchise granted by a city was limited to twenty-five years, the period for which the corporate grantee was primarily organized, or was meant to accompany an extension of the grantee's corporate life, the fact that the grantee, in former litigation in which that question was neither material nor adjudicated, the primary period having then some years to run, described the franchise as a franchise for twenty-five years, affords no basis for an estoppel by conduct or by judgment; and the more clearly so where the grantee, in the same litigation, also described the franchise as granted for the whole period of its corporate existence.

While in the computation of time beginning "from and after" a day named it is usual to exclude that day and begin with the next, this is not done where it will obviously defeat the purpose of those whose words are being construed or applied.

THE case is stated in the opinion.

*Mr. George W. Jolly* and *Mr. Ben D. Ringo*, with whom *Mr. John A. Dean, Jr.,* and *Mr. La Vega Clements* were on the briefs, for appellant.

*Mr. William T. Ellis*, with whom *Mr. James J. Sweeney* was on the brief, for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to enjoin the City of Owensboro, in the State of Kentucky, from obstructing and preventing the maintenance and operation of an existing water works plant in that city. The plaintiff relies upon a franchise from the city which the latter insists has expired. In the District Court the franchise was held to be still in force and the city was enjoined from giving effect to an ordinance and a resolution impairing the same.

By an ordinance of September 10, 1878, the city granted to the Owensboro Water Company, its successors and assigns, the privilege of constructing and operating water works within the city and of using its public highways for that purpose. In its first section the ordinance described this grant as made "for the duration of the said Company" and in another section expressly limited it to "twenty-five years from the passage of this ordinance." Other provisions required the water company to lay and maintain pipe lines in certain streets with a fire hydrant at each street intersection and obligated the city to rent and pay for the hydrants "for and during the term of twenty-five years

from the passage of this ordinance." Availing itself of the privilege so granted the water company constructed a water works plant in the city and operated the same until June 3, 1889, when it sold the plant to the Owensboro Water Works Company, the plaintiff in this suit. This company is a Kentucky corporation whose original articles of association stated that its existence was to begin on June 1, 1889, and terminate at the end of twenty-five years, "subject to such extensions of its term of existence as by law provided." On June 3, 1889, shortly before the plaintiff's purchase, the city adopted an ordinance containing the following provision, among others:

"Sec. 1. That in consideration of the purchase by the Owensboro Water Works Company, of Owensboro, Kentucky, of the water works of the Owensboro Water Company, the franchise and license are hereby granted to the Owensboro Water Works Company, of Owensboro, Kentucky, and to its successors and assigns, for and during the existence of the said corporation, to maintain, complete and operate water works in the city of Owensboro for supplying the city of Owensboro and the inhabitants of said city and its vicinity with water for public and private purposes, and to use within the present and future limits of the city of Owensboro, the streets, alleys and other public highways thereof for the purpose of laying, repairing and taking up mains, service pipes, hydrants, and other apparatus for the supply of water."

By the second section the city accepted the plaintiff "as the successor" of the other company in respect of "the contract for hydrant rental" then existing between the city and the other company "as fully as if such existing contract had been originally made" by the city with the plaintiff "without the intervention" of the other company; and by the third section the city gave its consent to "the consummation of the said purchase of the said water works."

The plaintiff accepted the provisions of this ordinance, relied upon them in consummating the purchase, and ever since has maintained and operated the water works and used the public highways of the city in that connection.

On May 6, 1914, the plaintiff's articles of association were amended, conformably to the state law (Ky. Gen. Stats. 1883, c. 56, § 7; Ky. Stats. 1903, §§ 540, 559, 574), by adding a provision the declared purpose of which was to extend the plaintiff's corporate existence for the period of twenty-five years.

Whether the plaintiff now has a franchise from the city turns chiefly upon the construction and effect of the ordinance of June 3, 1889. By it the city then said that "the franchise and license" to maintain, complete and operate water works in the city and to use its public highways for that purpose "are hereby granted to the Owensboro Water Works Company, of Owensboro, Kentucky, and to its successors and assigns, for and during the existence of the said corporation." Now the city claims, first, that by the ordinance it merely assented to the purchase by the plaintiff of the rights of the other company under the ordinance of 1878; second, that if a franchise was granted to the plaintiff, it was only for the life of the other company, and, third, that even if a franchise was granted to the plaintiff for the period of its own existence, it was not to endure beyond the primary term of twenty-five years named in the plaintiff's articles of association. But none of these claims has any support in the ordinance. Its terms are direct and its meaning plain. In apt words its first section not only grants a franchise to the plaintiff, but makes the life of the franchise co-extensive with the plaintiff's existence; and we find nothing in the ordinance which suggests that the words fixing the duration of the franchise are to be taken as comprehending anything less than the full corporate existence of the plaintiff. The right to extend its existence beyond the primary term was

given by statute and expressly reserved in the articles of association, and so it is reasonable to believe that had there been a purpose to limit the franchise to that term it would have been plainly expressed, as was done in the ordinance of 1878. The reasonable implication from the inclusion of such a limitation in the earlier ordinance and its omission from the later one is that the franchise granted by the latter was not to be thus limited.

Of the suggestion that under this view the franchise may be made perpetual by repeated extensions of the plaintiff's corporate life, it is enough to say that we are here concerned with but a single extension already effected. The statute permitting such extensions may not be in force when the present twenty-five year period expires, and, if it be in force, nothing may be done under it.

Because the primary term—the first twenty-five years—expired May 31, 1914, and the amendment to the articles of association stated that the extension for another twenty-five years would begin "from and after" June 1, 1914, the city insists there was a hiatus of one day between the two periods and that in consequence the extension never became effective. We are not impressed with this contention. While in the computation of time that begins to run "from and after" a day named it is usual to exclude that day and begin with the next (*Sheets* v. *Selden's Lessee*, 2 Wall. 177, 190), this is not done where it will obviously defeat the purpose of those whose words are being construed or applied. The purpose of the amendment was to extend or prolong the plaintiff's corporate existence for another twenty-five years. It was adopted almost a month in advance of the expiration of the first twenty-five years, and, notwithstanding the use of the words "from and after," it shows very plainly that the second period was to begin where the first ended. Of course those words were not happily chosen, but as the amendment otherwise makes it certain that the extension was to be

effective on and after June 1, 1914, we think the amendment accomplished its purpose and that there was no hiatus.

By the ordinance of 1878, as before shown, the other company and the city entered into a contract respecting fire hydrants which was to be in force for twenty-five years from the date of the ordinance. One provision of that contract was to the effect that, if the company should make any extensions of its pipe lines at the city's request "during the said term of twenty-five years," the city would rent and pay for one hydrant at each street intersection along such extensions "for the unexpired term of said franchise." By a special provision in the ordinance of 1889, as we have seen, the plaintiff succeeded to the rights and duties of the other company under that contract as if it "had been originally made" by the city with the plaintiff; and this meant that the succession was only for the unexpired term of the contract. Acting under the contract the city from 1890 to 1895 adopted seven ordinances wherein it requested that particular extensions of the pipe lines be made by the plaintiff and declared that it (the city) thereby rented the hydrants along such extensions "for the unexpired term of the franchises of the said Water Company." The plaintiff accepted these ordinances and complied with the requests made in them. The city now claims that in what was thus done both parties plainly recognized that the franchise granted to the plaintiff was for a definite and known term of years, and was not to be affected by any extension of the plaintiff's corporate existence. But we think this claim disregards what was intended by the word "franchise" in the seven ordinances. They not only related to the same subject as did the contract of 1878, which was the maintenance and renting of fire hydrants, but they closely followed its words. That contract was made for a definite term, twenty-five years, and twelve of these had expired when

the seven ordinances were adopted. In adopting and accepting them the parties were not making a new hydrant contract, but acting under the one already in existence. It and the plaintiff's franchise were not co-terminous and should not be confused. The contract covered the old hydrants, of which there were many, as well as the new ones, and was to expire as to all at the same time, that is, on September 10, 1903, twenty-five years after the contract was made. That the city so understood—indeed, that both parties so understood—is affirmatively and clearly alleged in the city's answer, from which we excerpt the following:

"Defendant City says that after the passage of said [seven] ordinances the complainant Water Company did lay the mains required therein and attached the fire hydrants as provided in said ordinance and the defendant City paid it rentals in pursuance to said contract until September 10, 1903, at which time the complainant ceased to collect and the City ceased to pay rentals for said hydrants as provided in said ordinance and contracts, and said ordinances and contracts were construed to and did expire on September 10, 1903, and since that date the City has not paid to the complainant any hydrant rental under any of said rental contracts, or at all."

The plaintiff's franchise, as before shown, was granted June 3, 1889, and, of course, did not expire September 10, 1903. What did expire on that day was the contract made September 10, 1878, whereby the city agreed to rent and pay for the hydrants for the term of twenty-five years from that date. It is plain, therefore, that what was intended by the word "franchise" in the seven ordinances was that contract. There was nothing else to which it reasonably could refer.

The city further contends that the plaintiff is estopped from claiming a franchise extending beyond May 31, 1914, because in 1903 and 1904 in two suits against the

city it described its franchise as granted for a term of twenty-five years beginning June 1, 1889. But in neither suit was it material whether the life of the franchise was strictly limited to that period or was subject to prolongation by an extension of the plaintiff's corporate existence; and it is not claimed that this question was adjudicated in either suit. At that time nine or ten years of the primary period still remained and there was as yet no occasion to elect or determine whether the privilege of effecting an extension would be exercised. Besides, in both suits the franchise was also described by the plaintiff as granted for "the whole period of its corporate existence." Thus no basis is shown for an estoppel by conduct or by judgment.

Other objections are made to the decree, but they are of less merit and do not require special mention.

*Decree affirmed.*

MR. JUSTICE CLARKE, dissenting.

This case presents for decision the single but very important question whether the City of Owensboro, Kentucky, by ordinance passed on June 3, 1889, granted to the Owensboro Water Works Company a franchise renewable indefinitely and therefore in effect perpetual or only a franchise for twenty-five years "to maintain, complete and operate" water works in that city.

A perpetual right to the use of the streets of a city is such a serious burden upon a community that, though very reluctant to do so, I am impelled by an imperative sense of duty to place on record my reasons for concluding that the construction given by a majority of the court to the grant involved in this case is a mistaken one which can be reached only by violating two rules of construction which this court has repeatedly declared to express "sound doctrine which should be vigilantly observed and enforced."

The facts essential to an understanding and to a determination of the claim made in the record are as follows:

On the ninth day of September, 1878, a corporation named the "Owensboro Water Company" was incorporated under the laws of the State of Kentucky, and, on the next day, the City of Owensboro granted to that corporation the right and franchise to construct and operate in that city a water works plant, using the streets and alleys in the customary manner.

Section 1 of this ordinance grants to the Water Company the right to construct and operate water works within the city "*for the duration of the said Company.*"

After many details as to construction, service and rentals of hydrants by the city,§ 13 provides: "The rights, privileges and franchises hereby granted to and vested in said company shall remain in force and effect for twenty-five years from the passage of this ordinance." Thus it is too clear for discussion that the expression "for the duration of the said Company" in § 1 of this ordinance of September 10, 1878, was deemed, both by the city granting it and by the company accepting it, as meaning a term of twenty-five years.

The Water Company constructed a water works plant and operated it until the year 1889, when for the purpose of making larger capital available, a new corporation, bearing the name "Owensboro Water Works Company" was organized, with a charter, which contained in paragraph 6 this provision: "The time of commencement of the said corporation is the first day of June, in the year One Thousand Eight Hundred and Eighty-nine, *and it shall terminate twenty-five years thereafter, subject to such extensions of its term of existence as by law provided.*"

On June 3d, 1889, the council of the City of Owensboro, passed an ordinance, which was accepted by the new corporation, which, after reciting that the new corporation desired to purchase the water works of the old one, to-

gether with its existing contracts for supplying the city and its inhabitants with water; that the new company desired a grant of a franchise and license "to maintain, complete and operate water works in the city" and that the city should accept the new company as the successor of the old to the contracts for hydrant rentals, proceeds to ordain:

Section 1. That the franchise and license to maintain, complete and operate water works in the City of Owensboro "are hereby granted to the Owensboro Water Works Company, · . . . and to its successors and assigns, *for and during the existence of the said corporation;*"

Section 2. That the new company shall be accepted by the city "as the successor to the contract for hydrant rental now existing between the City of Owensboro and the Owensboro Water Company as fully as if such existing contracts had been originally made by the City of Owensboro with the said The Owensboro Water Works Company, . . . without the intervention of the said Owensboro Water Company."

The Kentucky General Statutes of 1883, c. 56, § 7, p. 548, under which the Water Works Company was organized in 1889, contained this provision:

"Corporations for the construction of any work of internal improvement may be formed to endure for fifty years; *those formed for other purposes shall not exceed twenty-five years in duration;* but in either case they may be renewed from time to time for periods not greater than was at first permissible, *if three fourths of the votes cast at any regular election held for that purpose shall be in favor of such renewal.*"

While the plaintiff in error disputes it, we conclude that it is clear that, by appropriate action taken on the sixth of May, 1914, the Water Works Company amended its articles of incorporation by amending article 6 thereof (hereinbefore quoted) so that, as amended this section

became: "*The time of the commencement of said corporation is the first day of June, 1889, and it shall terminate twenty-five years* *thereafter,* subject to such extensions of its term as by law provided, and same is now, by these amended articles of incorporation, *extended for the period of twenty-five years from and after the 1st day of June, 1914.*"

Since confessedly the Water Works Company is not a corporation organized for the construction of "any work of internal improvement," if we read together the charter of the Water Company dated May 30, 1889, the ordinance of the City of Owensboro dated June 3d, 1889, and the statute of Kentucky, which we have quoted, limiting the duration of corporations to twenty-five years, we see that the question for decision is narrowed to this, viz:

Does the grant to the Water Works Company of the franchise and license "to maintain, complete and operate" water works "*for and during the existence of the said corporation*" confer on the company a franchise in effect perpetual to use the streets of the city for water works purposes, or is it limited to twenty-five years?

The limitation of the grant to the twenty-five years "duration" of the corporation would be beyond question were it not for the provision of the charter that the termination of the life of the company after 25 years shall be subject to such extensions as are provided for by law and for the provision of the statute quoted "that they [such corporations] may be renewed from time to time for periods not greater than was at first permissible"—in this case for an additional twenty-five years. The conclusion of the majority of the court is that this authority given to the stockholders to renew "the duration" of the corporation (a discretionary power which is found in the charter, not in the grant, and which might or might not be exercised) expanded and extended the expression of the grant "during the existence of the corporation" so as to make it as if it read "*during the existence of the said cor-*

*poration" and also for such "renewals" of such existence as the stockholders of the company may, by appropriate action, favor some time in the future*—thereby making the grant in effect a perpetual one.

The two rules for the construction of such grants, which have been referred to, have been firmly established by decisions of many courts, but no court has been more definite and resolute than this court has been in the emphasis with which it has announced and applied them. These rules are:

(1) As announced by this court most clearly, and with full consideration of the authorities, in *Blair* v. *Chicago*, 201 U. S. 400, 463: "It is a firmly established rule . . . that one who asserts private rights in public property under grants of the character of those under consideration [city ordinances], must, if he would establish them, come prepared to show that they have been conferred in plain terms, for nothing passes by the grant except it be clearly stated or necessarily implied." And the court gives as the sound reason for this rule that: "It is matter of common knowledge that grants of this character are usually prepared by those interested in them, and submitted to the legislature with a view to obtain from such bodies the most liberal grant of privileges which they are willing to give. This is one among many reasons why they are to be strictly construed" (p. 471). And from Cooley on Constitutional Limitations is quoted with approval this statement: "The just presumption . . . in every such case is that the State has granted in express terms all that it designed to grant at all. . . . This is sound doctrine, and should be vigilantly observed and enforced." (p. 471). 'Continuing to give to the rule the emphasis which it so richly deserves, the opinion continues and quotes from earlier decisions of this court declaring that "any ambiguity in the terms of the grant must operate against the corporation and in favor of the public, and the corporation can

claim nothing that is not clearly given by the law. . . . The principle is this, that all rights which are asserted against the State must be clearly defined, and not raised by inference or presumption" (p. 472). The discussion concludes with the statement, quoted from *Slidell* v. *Grandjean*, 111 U. S. 412, that it is a wise doctrine because "it serves to defeat any purpose concealed by the skillful use of terms, to accomplish something not apparent on the face of the act, and thus sanctions only open dealing with legislative bodies" (p. 473).

(2) The second rule to which we have referred finds clear expression in *Chicago* v. *Sheldon*, 9 Wall. 50, 54, as follows: "In cases where the language used by the parties to the contract is indefinite or ambiguous, and, hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence. The interest of each, generally, leads him to a construction most favorable to himself, and when the difference has become serious, and beyond amicable adjustment, it can be settled only by the arbitrament of the law. But, in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one."

This rule was approved in terms in *Topliff* v. *Topliff*, 122 U. S. 121, and it has been repeatedly announced as the settled doctrine of this court.

Applying these rules in the reverse order of their statement I shall now give my reasons for concluding that the interpretation by the parties to it of the grant under consideration limits it to a life of twenty-five years.

The ordinance of 1878, in the part of it assumed by the Water Works Company by its acceptance of the ordinance of 1889, provided that "If —. . . extensions of pipe shall be made by said company during the said term of twenty-

five years *at the instance or request of said city,*" the city should be bound to rent and pay $50 a year for one hydrant at each street intersection. Under this provision, beginning on October 6, 1890 (a little more than a year after the grant was made), and continuing, certainly as the record shows, until September 16, 1895, the city, by ordinance made *seven distinct demands* upon the Water Works Company to lay additional pipes in the streets, and in each ordinance provided: "The City of Owensboro hereby rents of the said Water Company the above named hydrants *for the unexpired term of the franchises of the said Water Company,*" and promises to pay, etc. Here is a plain declaration, seven times repeated, by the city, the first made, as we have stated, very shortly after the grant was made, that the city understood that the grant was not an unlimited or perpetual one, for it promises to pay only "*for the unexpired term* of the franchises of the said Water Company." By the acceptance of each one of these seven ordinances, the Water Company just as plainly assented to this construction of the grant. This is highly persuasive against the Water Company because such construction was so distinctly against its interest. The record shows that these ordinances bear dates as follows: (1) October 6, 1890; (2) February 2, 1891; (3) November 7, 1892; (4) December 5, 1892; (5) October 1, 1894; (6) May 7, 1894, and (7) September 16, 1895.

The most persuasive comment I think that can be made upon this construction of this grant by both of the parties to it is contained in the last sentence of the quotation we made from *Chicago* v. *Sheldon, supra,* "But, in an executory contract, and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one."

But much more is to be found in the record as to what the parties, particularly as to what the

Water Works Company, thought was the term of this grant.

On the twenty-first day of September, 1903, the Water Works Company instituted a suit in the Circuit Court of the United States for the Western District of Kentucky, in an effort to enjoin the city from issuing bonds and spending money for the purpose of constructing a municipal water plant, and in the bill filed in the case it alleges that it is a corporation, with power conferred upon it to supply the defendant city and its inhabitants with water *"for the fixed period of twenty-five years from the date of its incorporation:"* it alleges that the grant to it was *"extended during the whole period of its corporate existence, a period of twenty-five years from the 1st of June, 1889:"* and that by the contract created by the ordinance of June 3d, 1889, as well as by the contracts existing between the city and the earlier company the Water Works Company "acquired and now has conferred upon and vested in it the sole and exclusive right, franchise and privilege *during the period of twenty-five years from and after June 1st, 1889,* to maintain, complete and operate water works in the City of Owensboro," etc. Again it alleges in this bill that the said contract conferred upon it the exclusive privilege of furnishing water through the hydrants to the said city *for twenty-five years from the first of June, 1889;* that it has in all things complied with the requirements of the ordinance of 1889 and "that it is ready, willing and able to continue to carry out its said contract and *to continue to perform and do all the things of it required therein until the expiration of said contract on June 1st, 1914."* Yet again it alleges that the city did by the ordinance aforesaid (of 1889), make and enter into a valid and binding contract with this complainant, wherein and whereby an obligation was created on the part of this complainant to lay pipes, conduits and hydrants in and along the streets and *to furnish for the period of twenty-five years from the first of*

*June, 1889,* water for public and private purposes, etc., and it solemnly avers that the purpose of the city to establish a municipal water works would result in a violation of this contract, which is within the protection of Section 1, Article 10 of the Constitution of the United States, which prohibits the passage of any law impairing the obligation of contracts.

This elaborate bill filed by the Water Company concludes with the prayer for an injunction, restraining the city *"from constructing, equipping, operating or maintaining a system of water works in said city at any time until after the 1st day of June, 1914."*

This bill is sworn to by the president of the Water Works Company and significantly enough is signed by the same counsel who sign the bill in the pending case.

But the Water Company, continuing of the same mind as to the meaning of the grant under consideration, in a petition filed in the Circuit Court of Daviess County, Kentucky, almost a year later, on the 27th day of May, 1904, in a case in which the Company was seeking to collect rentals for hydrants, again alleged that by the grant of 1889 the franchise of the Company was "extended during the whole period of its corporate existence, *a period of twenty-five years from and after the 1st of June, 1889,"* and that this same ordinance "conferred upon and vested in it the sole and exclusive right, franchise and privilege during *the period of twenty-five years from and after June 1, 1889,* to maintain, complete and operate water works in the city of Owensboro," etc.

In this petition plaintiff specifically sets up the ordinances to which we have referred, calling upon the Water Company to construct extensions, and which were accepted by the Company, and adds two others of the same purport, one dated May 15, 1899, and one July 25, 1900; alleges that in each of these the city requested the company to extend the lines and place hydrants *"for the*

*unexpired term of the franchise of this plaintiff,*" and that within sixty days from the passage of said ordinances it filed its acceptance of them with the clerk of the city.

It is difficult to imagine an interpretation of a contract by the parties to it more specific or controlling than is to be found in the declarations in these court proceedings, made deliberately and under the advice of counsel.

In the presence of this record I cannot doubt that it was understood and intended in the beginning by the untechnical men of affairs who composed the city council and by the company that this grant was a limited one, extending for not to exceed twenty-five years from June 1st, 1889, and that this conviction continued in the minds of all the parties concerned in it, finding frequent expression in the conduct of business between them for full fifteen years, certainly until 1904, when the company is found claiming in the courts that the grant expired on June 1, 1914, and therefore I cannot assent to the conclusion that it is in effect a perpetual grant of the right to use the streets of the city, convinced as I am that such result cannot be reached without doing violence to the rule referred to, so firmly established by this court, which has been penetratingly condensed into the expression "Show me what men have done under a contract and I will tell you what it means." And, I may add, without running also counter to the decision of this court in *Tennessee v. Whitworth,* 117 U. S. 129, in which it is declared that in construing contracts springing from statutes the words employed are, if possible, to be given the same meaning they had in the minds of the parties to the contract when the statute was enacted.

But, turning now from the interpretation placed upon this ordinance by the parties to it, and confining our attention strictly to the language used in making the grant, let us ask ourselves whether it can reasonably be said, upon the facts presented by this record, that a franchise

in effect perpetual was granted in the streets of the city "in plain terms," "in express terms," without "ambiguity," as is required by the first of the rules for the construction of such grants, which we have seen is so fully approved by this court.

If the pertinent parts of the grant, of the charter of the company and of the Kentucky statute be written together, we shall have this paragraph:

The City of Owensboro grants to the company the right to maintain and operate a water works plant during the existence of that corporation, which existence is declared in its charter to commence on June 1st, 1889, and to terminate twenty-five years thereafter, subject to such extensions as the law provides, and is also limited by the state statute, under which it was created, to a duration of twenty-five years, with the privilege of renewal for a like period if a three-quarters vote of its stockholders "shall be in favor of such renewal."

I cannot doubt that others than skilled lawyers (and we cannot assume that all of the members of the city council were skilled lawyers) reading such a paragraph as this would understand that the existence of the life of the Water Works Company, and so of the grant, was for the declared twenty-five year period between the "commencement of the life" of the corporation and the time when it must "terminate." To give it any other meaning is to magnify the subordinate provision for a possible extension of the life of the corporation so as to make that control the definite, specific, clearly expressed limitation of the charter. But specific should always control general provisions in a contract where they conflict—definite and clearly expressed limitations should dominate indefinite and discretionary privileges. To declare this grant perpetually renewable is to make its duration dependent upon the discretion of the grantee corporation, to be exercised twenty-five years after the grant was made, and

it is not difficult to conceive of circumstances under which the required three-fourths of the stockholders of the company would not favor an extension of its corporate life,— if, for instance, its business were a failing one because of competition with a city owned plant, or if the stockholders differed in opinion as to the wisdom of making a possible sale of its property. This is a result which the court should accept only under sheer coercion—I can designate it by no milder term—of the "plain" "express" and "unambiguous" provision in the grant, and very certainly it is a result which should not be derived from ingenious construction of a narrow and optional clause in the charter of the grantee (not in the grant) which was probably inserted for the purpose of providing for the contingency of a new grant to the company, to be made at the expiration of the one for twenty-five years, rather than in an attempt to automatically make an extension of that grant. *When to this it is added that the provision for extending the life of the corporation is not to be found anywhere in the ordinance making the grant, which the councilmen had before them, but only in the charter of the corporation and in the statute of the State, which they probably never saw,* I not only cannot bring myself to assent to the conclusion that, resolving, as we must, every doubt in favor of the public, a franchise in effect perpetual in the streets of the city was given to the Water Works Company "in plain," "in express" and in "unambiguous" terms, but, on the contrary, I am very clear that the language used in making this grant limits it, as we have seen that all of the parties thought that it limited it, to the term of twenty-five years.

This conclusion has been arrived at without the application of narrow distinctions to the words used in the charter of the Water Company and in the statute of Kentucky. But sufficient to turn the case, if it be thought a close one, might very well be found in significant distinctions with

respect to the words used in the provision of the charter
of the company, on which the opinion of the majority of
the court turns, viz: That the twenty-five year limitation
so clearly expressed is "subject to such extensions of its
term of existence as by law provided."

These distinctions are, first, that the state law did not
provide for "extensions" of the corporate existence. The
most that can be said of the law is that it provided a
method by which the stockholders of the company—not
the law—might, in their discretion "renew" the charter
for an additional term after the expiration of the twenty-
five year period which the law provided for. The sec-
ond distinction is that the authority to "renew" the
corporate existence of the company, given by the statute,
becomes in the charter, as written by the company,
"extensions . . . by law provided," which gives to
the corporation the advantage which many courts and
writers have found in the distinction between the right of
"extension" and the right of "renewal" of a contract,
the latter indicating an intention to resort to a new grant
for the future, while the former contemplates "a pro-
longation, a lengthening out" of a grant previously made.
This distinction is perhaps too subtle to serve the ends of
substantial justice in practical affairs, but apparently the
authors of the charter which we are considering thought it
a refinement which it was worth their while to lay hold
upon. *Whalen* v. *Manley*, 68 W. Va. 328; *Leavitt* v. *May-
kel*, 203 Mass. 506, and authorities cited.

The District Court finds its conclusive authority for
holding the grant to be in effect a perpetual one in *City of
Owensboro* v. *Cumberland Telephone & Telegraph Co.*, 230
U. S. 58. An inspection of the ordinance there considered
shows that there was no attempt whatever in terms to
limit the duration of the grant; that no reference was made
in the ordinance to the life of the corporation to which
the grant was made, and that by express terms the grant

is declared not to be exclusive and to be subject to alteration and amendment. While it is true that the members of this court differed as to the effect of the provision for alteration and amendment of the ordinance, yet the effect of these distinctions when grouped together is such, it seems to me, as to render the decision in that case wholly inapplicable to an ordinance such as we are considering here.

It may be that the settled conviction which I have that no legislator, congressman, or councilman would knowingly consent to grant perpetual rights in public streets to a private corporation has so darkened my understanding that I cannot properly appreciate the point of view of my associates and the reasons advanced in support of it, but, however this may be, the reasons stated in this opinion convince me that the grant under discussion was not in effect a perpetual grant, but was for the period of twenty-five years, which expired on the first day of June, 1914.

MR. JUSTICE BRANDEIS concurs in this opinion.

MR. JUSTICE DAY concurs in this dissent, upon the ground that, applying the well settled rule that grants of the character here in question are to be given strict construction, and doubts as to their meaning resolved in favor of the public, and ambiguities are to be resolved in like manner, it is by no means clear that the City intended to grant to the Water Company a franchise for its then corporate life of twenty-five years and for subsequent renewals thereof as the stockholders might determine; and he is of the opinion that the franchise expired at the end of the twenty-five year period for which its charter provided when the grant was made.