195 So. 894

**PHENIX CITY v. ALABAMA POWER CO.**

4 Div. 123.

Supreme Court of Alabama.

May 9, 1940.

J. W. Brassell, of Phenix City, and Jacob A. Walker, of Opelika, for appellant.

Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellee.

The Constitution of 1901 was in effect, and section 220 made it unlawful to use the streets for the operation of any public utility or private enterprise without obtaining the consent of the city: section 228 makes a limitation of thirty years upon a franchise grant by a city of more than 6,-000 population. The franchises were granted to the Columbus Railroad Company, a Georgia corporation, whose activities extended from Columbus, Georgia, across the river to the two adjacent cities, and were made to "exist and run during the life of the present charter of the Columbus Railroad Company, as incorporated by the legislature of the state of Georgia, and for any period of time that said charter may be extended by any renewal or renewals hereafter granted." At that time the charter of said corporation was under an act of the Georgia legislature, and extended from September 10, 1887 to September 10, 1937. In May 1930, its charter was extended by an act of the Georgia legislature for a period of one hundred and one years, or until May 12, 2031, A. D.

On October 1, 1930, said corporation, whose name was then Georgia Power Company, sold and conveyed its electric system and franchise to Alabama Power Company, with approval of Alabama Public Service Commission.

So that the franchises in question expired September 10, 1937, as appellant contends, or were extended to May 12, 2031, A. D., as appellee contends, on account of the extension of the charter of the Columbus Railroad Company, as it was originally named.

In 1926, the two cities having been then consolidated (see State v. Gullatt, 210 Ala. 452, 98 So. 373), an ordinance was passed permitting an abandonment of the street railway, but ratifying and confirming the franchises of 1903 in so far as they extended to the supply of light, heat and power. In November 1936, a contract with the city was made for electricity for street lighting, extending for five years, and beyond the period of the existence of the charter of the Columbus Railroad Company, as originally constituted; but after its charter had been renewed for one hundred and one years.

Appellant contends that the franchise cannot be made to extend for a period subject to the power of the legislature of another State.

FOSTER, Justice.

In 1903, Phenix City and Girard were separate corporations in Alabama, just across the river, the dividing line there between Alabama and Georgia. They were each cities with less population than 6,000, and had the charter power under acts of the legislature of Alabama to grant rights of way along its streets to street railway and electric light companies (Phenix City, Acts 1894–95, p. 41; Acts 1896–97, p. 307; Acts 1898–1899, p. 1183: Girard, Acts 1892–93, p. 944). The franchise granted to the Columbus Railroad Company by each city during that year was for the operation of a street railway and electric light system for public use.

■ The question of whether a certain legal situation is a delegation of legislative authority, and, therefore, in violation of the Constitution which designates the legislature to perform that service is here involved. The Court has held that the Constitution is violated when a statute is made to operate differently according to the discretion of any person or authority other than subsequent legislation; except with respect to certain details to be ascertained by a fact finding administrative authority, and subject to the fixation of minor rules and regulations applicable alike to all persons similarly situated. Wheeler v. River Falls Power Co., 215 Ala. 655, 111 So. 907; Parke v. Bradley, 204 Ala. 455, 86 So. 28; 16 Corpus Juris Secundum, Constitutional Law, § 133, 340; Patterson v. Jefferson County, 238 Ala. 442, 191 So. 681; 16 Corpus Juris Secundum, Constitutional Law, § 135, 344, 345; Mitchell v. State, 134 Ala. 392, 32 So. 687; 11 Am.Jur. 931, sections 221, 222, 230; Whaley v. State, 168 Ala. 152, 52 So. 941, 30 L.R.A.,N.S., 499.

■ For this reason, this Court has held that it is a violation of this feature of the Constitution for legislation to be so set up as to have a different effect on certain foreign corporations doing business in Alabama because they were created in a state whose laws are unfavorable to such corporations created in Alabama, and doing business in that state. Clark v. Mobile, 67 Ala. 217; State v. Firemen's Fund, 223 Ala. 134, 134 So. 858; State v. Praetorians, 226 Ala. 259, 146 So. 411.

This is said to be an unauthorized delegation of legislative authority. Many states have however held to a contrary view. 11 Amer.Jur. 931, section 220; 91 A.L.R. 798.

■ But broadly speaking, an act complete within itself can be made to depend upon some contingency for its operation to become effective. In re Opinion of the Justices, 232 Ala. 60, 166 So. 710; In re Opinion of the Justices, 227 Ala 291, 149 So. 776; Porter Coal Co. v. Davis, 231 Ala. 359, 165 So. 93; Ward v. State, 154 Ala. 227, 45 So. 655; Ex parte Hall, 156 Ala. 642, 47 So. 199; McNiell v. Sparkman, 184 Ala. 96, 63 So. 977; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, (23, 24, 25), 83 L.Ed. 441; McCreless v. Tennessee Valley Bank, 208 Ala. 414, 94 So. 722; 16 Corpus Juris Secundum, Constitutional Law, § 141, 415; 11 Amer.Jur. 926, section 216.

There are limitations. In re Opinion of Justices, 232 Ala. 56, 166 So. 706.

If we assume that by contract for a valuable consideration, a city can bind itself to a utility for the use of its streets for its service to the public, to continue during the corporate existence of such utility, the question now under consideration is whether such right is affected by the fact that its corporate existence is controlled by the power of some other state in which it was created, and which has sole control of that matter.

■ Is the fixation of the limit of existence of a foreign corporation doing business in Alabama, legislating for Alabama when the contract made by the corporation with an Alabama city or a grant to it by such city is to extend during the existence of the corporation? We will show that a franchise granted by a city to a utility and acted on, and on its faith and effect the utility has expended money in setting up in permanent fashion a distribution system not useful except by virtue of such franchise, is in the nature more of a contract than legislation.

■ It is well understood that municipal corporations in passing ordinances in the exercise of their police power, of taxation and of eminent domain, are performing a function of government which may be delegated to them by the state to prescribe local regulations of self government, and in so doing the state legislature is not regarded as transferring legislative power committed by the constitution to it. But since they in general derive their powers from the legislature, they can enjoy no powers which the legislature itself does not possess, unless they are conferred by the constitution. Since they are a part of the government, less than the whole, limitations upon the power of the state to legislate also mark the powers of municipal corporations to do so. 19 R.C.L. 706, section 17; 43 Corpus Juris 182, section 179.

We therefore cannot say that a city in the exercise of its delegated power to make regulations for its local self government can make them fluctuate at the will of some other state.

■■ But in the exercise of a legislative grant, the city and utility may contract for the period of the duration of a franchise without limit, except as contained in the constitution or some legislative enactment. When the city has a population of less than 6,000, there is no limit prescribed in the Constitution, and none is provided by law. When so, it can be made to extend

during the corporate existence of the utility. City of Owensboro v. Owensboro Water Works Co., 243 U.S. 166, 37 S.Ct. 322, 61 L.Ed. 650.

■ A franchise grant, as we' will show, is the creation of a property right, and is more than mere legislation.

■ Legislation can be not only the enactment of a law, but it may also be a contract subject to the rules of construction of other contracts, and be protected from inviolability applicable to their obligations. State of Indiana v. Brand, 303 U. S. 95, 58 S.Ct. 443, 82 L.Ed. 685, 113 A.L.R. 1482; United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137.

■ Parties to a franchise contract, it has been held, may fix its duration to depend upon action by the stockholders of the corporation, which is a party to it, to renew its charter, as in the Owensboro case, supra. When they make duration to depend upon the corporate existence of one of its parties, and stipulate that such existence may be extended by the power that created it, the city is not thereby delegating legislative authority to such power to fix the duration of its enactments in violation of the rule set out in our cases cited above. The parties to a contract may either prescribe a fixed term for its duration or make it depend upon some prescribed contingency. See generally 17 Corpus Juris Secundum, Contracts, 877, § 385.

■ We are not here dealing with a franchise in which no limit is expressed, and we are not concerned with discussions which relate to that situation. See 23 Am. Jur. 734; 12 Am.Jur. 42, note 5; Benton Harbor v. Michigan Fuel & Light Co., 250 Mich. 614, 231 N.W. 52, 71 A.L.R. 114, 121. We see no violation of a law or the Constitution of Alabama in the 'franchises in question in so far as the term of their duration is there expressed.

Appellant also insists that it, the consolidated city of what was formerly Phenix City and Girard, has exercised the right to revoke the franchises granted by each of them in 1903 before the consolidation, in pursuance of the authority contained in section 22 of the Constitution of 1901. There is no other provision of law on which such right is said to exist.

Its provisions here applicable are that no "law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or im-munities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment."

The agreed facts show that in accordance with the provisions of said franchise ordinances, the Columbus Railroad Company, their beneficiary, at a cost to it of many thousand dollars, constructed a street railway system and an electric distribution system in the two cities, and it and its successors have continuously, up to the present time and in accordance with such authority, operated said electric distribution system in them. Also that it is necessary in order for respondent to continue to furnish electricity to the city and to its residents that respondent maintain its poles and electric wires along and upon the streets of the city: that it is the only one now so engaged.

The Constitution of 1875, after preserving the obligation of contracts, prohibited the making of irrevocable grants of special privileges or immunities. It did not prohibit "exclusive" grants. It did not provide that "every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment," as in that of 1901 (section 22), here applicable.

Provisions appear for the first time in the Constitution of 1875, which prohibit irrevocable grants of special privileges, and they did not prohibit in terms exclusive privileges. But this Court in Birmingham & Pratt M. Street Railway Co. v. Birmingham Street Railway Co., 79 Ala. 465, 58 Am.Rep. 615, held that the State legislature had no power to make exclusive grants, and could not confer such rights on cities and had not done so, and none is to be inferred from what is section 220 of the Constitution of 1901. The Court observed: "It seems plain from the very terms used, that the evil intended to be specially prevented was the granting of exclusive privileges in the nature of a monopoly by the legislative creation of corporate franchises." It was said that the "irrevocable grant" thus prohibited, was of an "exclusive privilege," which the State could and had granted prior to the Constitution of 1875. So that the use of the word "exclusive" in the Constitution of 1901 only expressed what had been declared to be the meaning of the Constitution of 1875. Bienville Water Supply Co. v. Mobile, 186 U.S. 212, 22 S.Ct. 820, 46 L.Ed. 1132.

554

The Constitution of 1901 also expressed for the first time the words "every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment."

In the case of Weller v. City of Gadsden, 141 Ala. 642, at page 659, 37 So. 682, page 685, 3 Ann.Cas. 981, Justice Tyson, in 1904, noted and discussed this added feature of section 22, and expressed his interpretation of it in this connection, as follows: "The concluding clause, which first appears in the Constitution of 1901, is relied on to sustain the ordinance purporting to revoke the rights of complainants under this contract. It is obvious that this section refers to laws and grants made by the Legislature, and to revocations, alterations, and amendments by the Legislature, or perhaps by its authority, of grants of franchises, privileges, and immunities made by that body. No such revocation of the ordinance contract of the City of Gadsden has been attempted by the Legislature, nor has that body conferred or attempted to confer on the city authorities the power to revoke such a contract, even if it be true that the contract of the city, containing, among other things, a grant of a franchise founded on a valuable consideration, and necessary to enable the grantees to perform their obligation to furnish water, is such a grant of a franchise as comes within the contemplation of section 22, and thus within the power of the Legislature to revoke— a proposition we do not wish to be understood as deciding or admitting." The Court found that it was not necessary for the purposes of that case to construe section 22. So that the above discussion is only valuable for its inherent reasoning.

In the same connection, in 1924, the subject was discussed by Justice Holmes for the Supreme Court of the United States, which was adopted by that court in the case of Opelika v. Opelika Sewer Co., 265 U.S. 215, 44 S.Ct. 517, 518, 68 L.Ed. 985, where he states: "But we see no reason to doubt that the Legislature without impairing its power to revoke may give a city power to make a contract from which the city of its own motion may not recede."

■ The power of the State to confer in such terms on a city the right to make contracts and grant franchises as that the city may not revoke them has been recognized in many cases. St. Cloud Public S. Co. v. St. Cloud, 265 U.S. 352, 44 S.Ct. 492, 68 L.Ed. 1050; Railroad Comm. of California v. Los Angeles, 280 U.S. 145, 50 S.Ct. 71, 74 L.Ed. 234; City of Bessemer v. Bessemer City Water Works, 152 Ala. 391, 44 So. 663; Mobile Electric Co. v. Mobile, 201 Ala. 607, 79 So. 39, L.R.A. 1918F, 667; Gadsden v. Mitchell, 145 Ala. 137, 157, 40 So. 557, 6 L.R.A.,N.S., 781, 117 Am.St.Rep. 20. Though sometimes subject to revocation by the State: Alabama Water Co. v. Attalla, 211 Ala. 301, 100 So. 490; Union Dry Goods Co. v. Georgia Public Service Co. 248 U.S. 372, 39 S.Ct. 117, 63 L.Ed. 309, 9 A.L.R. 1420; Oppenheim v. Florence, 229 Ala. 50, 57, 155 So. 859. A franchise granted by a city often becomes a contract according to its terms, but subject to applicable restrictions prescribed by law or the Constitution. 12 Am.Jur. 40, section 408, page 45, section 414; Town of New Decatur v. American Tel. & Tel. Co., 176 Ala. 492, 58 So. 613, Ann.Cas.1915A, 875; Birmingham & Pratt M. Street Railway Co. v. Birmingham Street Railway Co., supra; Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341; Columbus Railway, Light & Power Co. v. Columbus, 249 U.S. 399, 39 S.Ct. 349, 63 L.Ed. 669, 6 A.L.R. 1648; Owensboro v. Owensboro Water Works Co., 243 U.S. 166, 37 S.Ct. 322, 61 L.Ed. 650.

■ It is a property right subject to its terms and effective limitations. 23 Am. Jur. 717, section 5; 12 Am.Jur. 347, section 659. But the power of a city to grant a franchise is by virtue of legislative authority. 29 Corpus Juris 646, section 409; 44 Corpus Juris 932, section 3693. Section 220, Constitution, is not a grant of such power, but the reservation of a restriction on legislative authority. And by it the State is not divested of its power to grant franchises subject to the consent of the city affected. Ex parte Ashworth, 204 Ala. 391, 86 So. 84. But the State has conferred on cities the power to grant franchises, but not the power to revoke them. See, section 2016, Code. Formerly it was usually in the city charter. Birmingham & Pratt M. Street Railway Co. v. Birmingham Street Railway Co., 79 Ala. 465, 58 Am. Rep. 615; Gadsden v. Mitchell, supra; Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117; Mobile v. Farrell, 229 Ala. 582, 158 So. 539; Ex parte Ashworth, supra; Birmingham v. Hood-McPherson, 233 Ala. 352, 172 So. 114, 108 A. L.R. 1140.

Section 228, Constitution, shows that the Constitution did not intend to confer on cities the right to revoke all franchises. For if so, there would be no need to fix a limit for their duration. But since the cities derive their authority to grant franchises from the legislature, it may or may not require them to be revocable by the city doing so, or the city may so stipulate in the franchise. If the legislature so requires or it is so stipulated in the franchise, the power to revoke it by the city would exist though such franchise be in form and substance a contract. 23 Amer. Jur. 735, section 26.

The respective charters of the two cities, in effect when the franchises were granted, authorized them to grant rights of way, etc., to street railway and electric light companies, and did not contain any features which would authorize them to revoke such grants. The right conferred on the cities to grant a franchise does not imply a power to revoke. Owensboro v. Cumberland Tel. & Tel. Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389. None is otherwise shown than that of section 22, Constitution. And this does not prohibit the legislature from conferring on a city the right to grant a franchise without the power of the city to revoke it; but not thereby affecting such power of the State to do so as under section 22, Constitution, it may possess, not now to undertake to define its meaning in that respect.

Other questions of much interest have been argued, but we need not discuss them in the light of our conclusion here expressed.

The decree of the trial court is in accord with our views, and it is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS, BOULDIN, and BROWN, JJ., concur.