Frank ARMSTRONG, III,
et al., Plaintiffs,

v.

UNITED STATES of America, Jefferson
National Bank, Defendants.

UNITED STATES of America, Defendant
and Third–Party Plaintiff,

v.

Frank ARMSTRONG, Jr. Trust for the
Benefit of Frank Armstrong, Jr., et
al, Third–Party Defendants.

No. Civ.A. 96–00100–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

May 26, 1998.

Charles S. McCandlish, Harrison & Johnston, Winchester, VA, for Plaintiffs.

Charles S. McCandlish, Harrison & Johnston, Winchester, VA, Aubrey J. Owen, Owen & Truban, Winchester, VA, for Frank Armstrong, III, Trustee of the Frank Armstrong, Jr. Trust for the benefit of Frank Armstrong, Jr., Estate of Frank Armstrong, Jr., Frank Armstrong, III, Executor of Estate of Frank Armstrong, Jr.

Julie C. Dudley, U.S. Atty's Office, Roanoke, VA, Angelo Frattarelli, Washington, DC, U.S. Dept. of Justice, for U.S.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

### I. Background

This case comes before the court following a labyrinthine chain of events. In many

ways, the case illuminates the arcane and convoluted nature of the Internal Revenue Code, forcing a recognition of the challenging—and somber—task of integrating and reconciling a multitude of the provisions of that and other statutes. The tortuous activities of the taxpayer groups further confounds analysis. In December 1991 and January 1992, Frank Armstrong, Jr. ("Decedent") made gifts of National Fruit Products, Co., Inc. (NFP) stock to certain family members, others, and various trusts ("Plaintiff Donees"),[1] for which stock he estimated the value as $100 per share on his tax returns. On January 3, 1992, the Plaintiff Donees agreed, in exchange for the gifts, to waive any claim for reimbursement for any gift taxes, penalties, or interest required to be advanced by them. On January 6, 1992, Decedent established The Frank Armstrong, Jr. Trust for the benefit of Frank Armstrong, Jr. ("Trust").

The Trust had the primary purpose of paying federal gift taxes (and professional fees) based on the 1991–92 gifts of stock and the secondary purpose of paying Decedent's federal income tax (and professional fees) arising from the redemption of NFP stock. The Trust was funded, for the most part, with a non-negotiable promissory note ("Contract"[2]) from NFP in favor of decedent for approximately six million dollars. Decedent transferred his interest in the Contract to the Trust on January 6, 1992. The Contract provided that NFP would pay certain tax liabilities for 1991 and 1992 gifts and stock redemptions before certain dates or events and on demand of the holder, in an amount determined by a certified public account.

The Contract further provided that once such payments were made, "any remaining principal balance of this note shall be paid to the noteholder on demand." The Trust instrument directed that the Trustee "shall demand and receive" the amounts necessary for the 1991 and 1992 redemptions and gifts. Moreover, the Trust directed the Trustee to demand and receive from NFP on the Contract, and pay to the Internal Revenue Service, amounts reasonably approximated as necessary for tax liability arising from the 1991 and 1992 stock gifts and redemptions The interplay of the Contract and the Trust instrument, as it is affected by the tax assessments and payments made between 1992 and 1995, is central to the dispute before the court.

Prior to his death, Decedent faithfully calculated and paid his gift and income tax liabilities. On April 15, 1992, Decedent determined his federal income tax for the preceding year, which tax liability he paid in part and the Trust paid in part, according to the Trust instrument.[3] Also on April 15, 1992, Decedent filed his 1991 gift tax return and remitted payment with that return. On January 8, 1993, Decedent filed a 1992 federal gift tax return and remitted full payment. On November 17, 1995, additional federal gift tax liabilities were assessed for tax years 1991 and 1992, which liability was paid on that same date.[4]

Decedent passed away on July 29, 1993 and the IRS has since experienced greater difficulty in collecting for the tax liability of the Trust. On October 14, 1994, the Trustee filed a fiduciary income tax return for the

---

1. In 1991, Mr. Armstrong, Jr. gave gifts of common stock to the following individuals: Frank Armstrong, III, William Armstrong, JoAnne Strader, Gretchen Redmohd, Frank Armstrong, IV, Katherine Armstrong, William Armstrong, Jr., Kimberly Armstrong/Branner (married in 1992 presumably) Holly Armstrong, Margaret Papke, Amy Braithwaite, Jody Wall, John Strader, Daniel Redmond, Elizabeth Redmond. In 1992, Mr. Armstrong, Jr. gave gifts of common stock to the same individuals as in 1991 as well as to the Frank Armstrong, Jr. Employee Trust and the Frank Armstrong, Jr. Generation Skipping Trust. These parties are the Plaintiff Donees.

2. For reasons explained fully *infra*, the court finds that the instrument, termed a "note" by the

parties, is most appropriately called simply a "contract." For purposes of clarity, the court will refer to this instrument as the "Contract."

3. The executor of Decedent's estate later amended the 1991 return to reflect certain income as arising from the stock redemptions. As explained *infra*, the United States now seeks payment of additional income tax for Frank Armstrong, Jr. for 1991.

4. Trustee and the estate of the Decedent have filed 843 forms seeking refunds for the payment of gift taxes for 1991 and 1992, but said tax liability is not in dispute in the current action.

Trust for 1993. The Trustee did not remit payment with the form. On April 15, 1995, the Trustee filed a fiduciary income tax return for the Trust for 1994. Again, the Trustee did not remit payment with the form. In response to the non-payment of the tax liability, the IRS issued, on June 12, 1995, a Notice of Intent to Levy to recover for the fiduciary income tax liability for the Trust for 1993.

At approximately the same time, the parties were engaged in ongoing negotiations regarding a reassessment of gift taxes for 1991 and 1992. Despite the negotiations and the Notice of Intent to Levy, Plaintiff Donees and the taxpayer (the Trust) entered, on June 14, 1995, into a Security Agreement and Pledge Agreement ("Security Arrangement") with Jefferson National Bank as escrow agent. On November 13 and 14, 1995, Plaintiff Donees recorded financial statements related to the Security Arrangement with the appropriate clerk of court and with the Virginia State Corporation Commission. The Security Agreement purports to secure payment of all sums required to be paid by the Trust (1991 and 1992 gift taxes and related costs for interest, penalties, carrying charges, professional fees, and escrow fees) with the assets of the Trust, including the Contract as the collateral. In consideration for the commitment of the Trust, the Plaintiff Donees gave the Trustee one dollar and a promise to forbear from bringing an action for declaratory judgment to determine. the parties' rights under the trust and/or an action for specific performance of the Trust's commitment to pay the 1991 and 1992 gift taxes.[5]

The IRS followed the Contract to the escrow agent in an attempt to satisfy the tax liability of the Trust. After issuing the May 31, 1996 Notice of Intent to Levy for the 1993 and 1994 fiduciary taxes due, the IRS filed in state court, on June 6, 1996, a Notice of Federal Tax Lien. On July 8, 1996, the United States delivered a Final Demand to the escrow agent who then delivered the Contract and the Document of Transfer and Assignment to the IRS on July 12, 1996. On July 17, 1996, the IRS demanded payment from NFP on the Contract of either the unpaid balance of the Contract or the amount of taxes due. NFP refused to pay on the Contract.

On July 23, 1996, in response to the IRS's demand for payment, the plaintiffs [6] filed suit under 26 U.S.C. § 7426, claiming wrongful levy. On October 4, 1996, the United States filed a Third–Party Complaint against Frank Armstrong, Jr. Trust for the Benefit of Frank Armstrong, Jr. and NFP, seeking a right, as a third-party beneficiary of the Contract, to foreclose on the Contract as payment of Frank Armstrong, Jr.'s remaining unpaid 1991 federal income tax liability. On August 15, 1997, plaintiffs and third-party defendants moved for summary judgment, as did the United States. Plaintiffs and third-party defendants claim that, as a matter of law, either the Plaintiff Donees, the Estate, or the Trust have a lien on the Contract superior to that of the IRS. Alternately, they claim that certain of these parties actually have ownership of the Contract which prevents the imposition of a levy by the United States. The United States seeks summary judgment in its favor as to its right to foreclose on the Contract to recover payment for the 1993 and 1994 fiduciary income tax liability and as to its right to demand payment on the Contract, as the third-party beneficiary, for unpaid portion of Frank Armstrong, Jr.'s federal income tax liability for 1991. The United States asserts that either the lien of the United States is superior to that of the plaintiffs as a matter of law or that plaintiffs lack standing to bring a wrongful levy suit at all. The United States further asserts that it is a third-party beneficiary to the Contract, who may enforce the Trustee's obligation to demand payment from NFP and to pay Frank Armstrong, Jr.'s additional federal income tax liability for 1991, as subsequently assessed by the I.R.S.[7]

---

**5.** This agreement may reflect the January 1992 promise of the Plaintiff Donees to forbear from seeking payment of gift taxes for gifts in 1991 and 1992.

**6.** The plaintiffs are the Plaintiff Donees as listed, *supra,* in n. 1.

**7.** *See* n. 3, *supra.*

On September 8, 1997, United States Magistrate Judge B. Waugh Crigler heard oral arguments in support of the parties' cross motions for summary judgment. The magistrate judge issued, on March 16, 1998, a report and recommendation for this court's consideration. In the report and recommendation, Magistrate Judge Crigler recommends that this court find that the government could not levy on the Contract because conditions precedent to a demand on the remainder of the Contract had not been met. Thus, the magistrate recommended that this court find that the Contract was not property upon which a lien would be created under 26 U.S.C. § 6321 because the property interest was too inchoate. Because the Magistrate Judge recommended the court find that the Contract was not property under section 6321, he further recommended that the court not reach the other issues raised by the parties, but rather simply quash the levy of the United States upon the Contract.

All parties have objected to the report and recommendation. The plaintiffs and third-party defendants argue that the magistrate judge erred in not determining that either the plaintiff Donees, the Trust, or the Estate had a superior lien on the Contract. The United States objects that the magistrate judge's finding that the conditions precedent to a demand on the Contract had not been met was an erroneous finding. Rather, the United States asserts, all (or most) of the tax liabilities provided for in the Contract have been paid. Therefore, the United States argues, the current holder (the United States) may demand payment of the remaining principal. The United States further objects that the one liability not satisfied but provided for in the Contract, the 1991 federal income tax liability for Frank Armstrong, Jr., is an unconditional payment and, therefore, properly sought in the third-party complaint. The court has engaged in a *de novo* review of the case as required by *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir.1982). Upon said review, the court adopts the report recommendation of the magistrate judge only in its conclusion that the Trust did not hold a property interest in the Contract sufficient to allow a levy by the United States. The court finds that plaintiffs have no standing to bring a wrong-

ful levy suit under 26 U.S.C. § 7426, that the United States improperly levied upon the Contract, and that the United States may not, as the third-party beneficiary of the Contract, seek payment of the unpaid remainder of Frank Armstrong, Jr.'s 1991 federal income tax liability because no cause of action has yet accrued on that Contract.

## II. Discussion

### A. Standard for Summary Judgment

Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court draws all inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court looks at the evidence in the case independently to determine whether a material issue of fact exists. *See Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 817–18 (4th Cir.1995). However, a mere scintilla of evidence will not suffice to survive summary judgment. *Shiflett v. G.E. Fanuc Automation Corp.*, 960 F.Supp. 1022, 1027 (W.D.Va. 1997); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court finds that the case now before it presents the rare situation in which summary judgment is appropriate in that the material facts relevant to the court's analysis are not in dispute; only the legal conclusions drawn from those facts remain in dispute.

### B. Standing under 26 U.S.C. § 7426

■ The court must first consider the issue of standing. *Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, ——, 118 S.Ct. 1003, 1007, 140 L.Ed.2d 210, —— (1998). If the plaintiffs have no standing, the court cannot continue to consider any further issue because the absence of standing to bring an action deprives the court of jurisdiction over the matter. *Id.* Article III of the Constitution limits the jurisdiction of the courts to "cases or controversies." *Allen v. Wright*, 468 U.S. 737, 750–51, 104 S.Ct. 3315,

82 L.Ed.2d 556 (1984). The requirement that a court hear only a "case or controversy" is central to the doctrine of separation of powers, a fundamental principal of our system of government. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–476, 102 S.Ct. 752, 757–761, 70 L.Ed.2d 700 (1982). "All of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Vander Jagt v. O'Neill,* 226 U.S.App.D.C. 14, 26–27, 699 F.2d 1166, 1178–1179 (1982) (Bork, J., concurring), *quoted in, Allen, supra,* 468 U.S. at 751, 104 S.Ct. 3315. *See also Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (noting that the doctrines limiting the power of the courts are "founded in concern about the proper—and properly limited—role of the courts in a democratic society"). Of these limiting doctrines, standing is perhaps central. It "embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen, supra,* 468 U.S. at 751, 104 S.Ct. 3315, *citing Valley Forge, supra,* 454 U.S. at 474–475, 102 S.Ct. 752. Should the plaintiffs not fall within the zone of interests protected by the law under which they have brought the current action, they lack standing and this court lacks jurisdiction to act upon their complaint.

When standing is based on a statute, then "the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." *Sierra Club v. Morton,* 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Under the Internal Revenue Code, certain taxpayers may challenge liens on their property by the United States. Section 6321 of Title 26 of the United States Code creates a lien in favor of the United States upon the property of a nonpaying taxpayer. It states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321 (1989). According to section 6322, the lien attaches at the time the assessment is made and continues until the liability is satisfied or becomes unenforceable due to lapse of time. 26 U.S.C. § 6322 (1989). If the government places levies on property not belonging to the taxpayer, the party from whom the property was wrongfully taken may contest, under 26 U.S.C. § 7426, such a wrongful levy. To have standing to contest a wrongful levy, a party must have a "fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon." *Frierdich v. United States,* 985 F.2d 379, 383 (7th Cir.1993); *see also Century Hotels v. United States,* 952 F.2d 107, 109 (5th Cir.1992). If the plaintiff can show such an interest, the burden shifts to the defendant to show a nexus between the property and the taxpayer. *Id.* "If the IRS prove[s] a nexus by substantial evidence, [plaintiff] then ha[s] the ultimate burden of proving the levy was wrongful." *Id., citing, Morris v. United States,* 813 F.2d 343, 345 (11th Cir.1987); *Valley Finance, Inc. v. United States,* 629 F.2d 162 (D.C.Cir.1980). If this court finds that plaintiffs in the instant case have no interest in the Contract, then plaintiffs have no standing to challenge the Contract. However, the issue of the propriety of the levy of the United States on the Contract remains under the third-party complaint seeking enforcement of NFP's duty to pay on the Contract.

Whether the plaintiff's have an interest in the Contract is determined according to state law. *United States v. Cameron,* 248

Va. 290, 448 S.E.2d 410, 412 (1994); *Knight v. United States,* 838 F.Supp. 1243 (M.D.Tenn.1993). Plaintiffs claim a validly perfected security interest in the Contract, based on the Security Agreement executed June 14, 1995. Although a conveyance, such as the Security Agreement, will ordinarily transfer a property interest, certain situations will render the transfers void. If the instant case were to present one of those situations, then the plaintiffs would have no standing to challenge the levy because they would have no property interest in the Contract. The court finds that the instant case does present such a situation.

Virginia law specifies two instances in which a conveyance will be void. First, a transfer "which is not upon consideration deemed valuable in law ... by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made." Va.Code Ann. § 55–81 (Michie 1995). In the instant case, the parties dispute whether the trust is insolvent or became so due to the Security Arrangement. Therefore, summary judgment is inappropriate under section 55–81.

■■■ Second, a conveyance is void if it is made with intent to hinder, delay, or defraud a creditor. Va.Code Ann. § 55–80 (Michie 1995). Because of the difficulty of proving actual intent, the courts have relied on presumptions, or "badges," of fraud. "From the existence of [certain circumstances], fraudulent intent may legitimately be inferred.... These [circumstances] are, among others, (1) the close relationship of the parties, (2) the grantor's insolvency, (3) pursuit of the grantor by creditors at the time of the transfer, (4) inadequate consideration, and (5) retention of possession of the property by the grantor." *In re AMA Corp.,* 175 B.R. 894, 896 (Bankr. W.D.Va.1995), citing, *In re Porter,* 37 B.R. 56, 63 (Bankr.E.D.Va.1984); *In re Claxton,* 30 B.R. 199, 212 (Bankr.E.D.Va.1983); *In re Decker,* 295 F.Supp. 501, 507 (W.D.Va.1969), citing 4 Collier on Bankruptcy ¶ 67.37 p. 530 (1967); 9 Michie's Jurisprudence, Fraudulent and Voluntary Conveyances, § 15 (1950). Intent, although it may be proved with cir-

cumstantial evidence, must be proved with "clear and convincing [evidence], and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge." *In re Decker,* 295 F.Supp. at 507–08, citing, *Hutcheson v. Savings Bank,* 129 Va. 281, 105 S.E. 677, 680 (1921); *Redwood v. Rogers,* 105 Va. 155, 53 S.E. 6 (1906). *See also In re Claxton, supra,* 32 B.R. at 236.

■■■ The United States argues that the Security Agreement in the instant case presents a situation in which, under Virginia law, the transaction is void. This court finds that the evidence surrounding the transfer of the Contract to the bank shows that at least four of the five *In re AMA* factors indicating fraudulent transfer are met in the instant case. First, Plaintiff Donees and the estate have close ties to the Trust and the Trustee. Second, at the time the parties entered into the Security Agreement, the United States had assessed the 1993 fiduciary income tax and the Trustee had reported (and of which he was, therefore, aware) the 1994 fiduciary income tax liability.[8] As to the 1993 and 1994 income tax liability, then, the Trustee was aware that the United States was seeking and would continue to seek payment by the Trust. Third, the consideration offered in the instant case suggests a fraudulent transfer. According to the Security Agreement, Plaintiff Donees agreed not to sue for a declaration of rights under the trust or for performance under the trust. In exchange for their promise to forbear prosecution, the secured parties (Plaintiff Donees) received a promise of payment according to the Trust instrument (i.e., they received a promise of a right which they already possessed—the right to payment of 1991 and 1992 gift tax liability) and a promise not to impair the value of the collateral (i.e., a promise to perform the fiduciary duty of a trustee, which duty was already owed by the Trustee). Thus, in exchange for rights certain of the Plaintiff Donees already possessed, the Plaintiff Donees gave the Trustee one dollar and the promise to forbear from bringing certain actions. The consideration given

8. This liability, however, was not assessed by the IRS until July 3, 1995.

those plaintiff named in the Trust (Plaintiff Donees)—rights they already possessed—is not adequate consideration.[9] As to Plaintiff Donees not named as remainder beneficiaries in the Trust, they gave the Trustee one dollar and a promise to forbear from bringing actions which they could not have brought in any case. The Plaintiff Donee trusts (the Frank Armstrong, Jr. Employee Trust and the Frank Armstrong, Jr. Generation Skipping Trust) and grandchildren could not bring suits to enforce the Trust because they were not beneficiaries under the Trust. Therefore, their promises not to sue for declaratory judgment or enforcement were without value and, under Virginia law, "forbearance to prosecute an invalid, worthless, or unfounded claim is not consideration recognized by law as valuable." *Hooff v. Paine,* 172 Va. 481, 485–86, 2 S.E.2d 313 (1939). Thus, the transaction between the Trust and Plaintiff Donees lacked adequate consideration as to any of the Plaintiff Donees, either because they acquired rights they already had or because they gave up rights they did not possess. The transaction also meets the fourth prong of the *In re AMA* test for a fraudulent transfer. 175 B.R. at 896. The Trust essentially retained possession of the Contract. The Contract was delivered to the escrow agent only as a security for the promise contained in the Security Agreement. The Trust lost possession of the Contract only if it failed to perform its obligations under the Security Agreement, as is the nature of security agreements. Thus, of the five factors indicating a fraudulent transfer, as set out in *In re AMA Corp., supra,* 175 B.R. at 896, only the issue of insolvency remains unresolved at this point, although defendant United States has alleged it. The court finds that the Security Agreement meets four of the five factors and that the showing is sufficient in this instance to indicate that the transaction is void under Virginia law.[10] Because the court finds the transaction to be void, it further finds that the plaintiffs have no interest in the Contract under the Security Agreement. Because they have no interest in the Contract under the Security Agreement, the plaintiffs lack standing to challenge the levy of the United States upon the Contract. Because plaintiffs lack standing, the court cannot and does not address their further claims to superior liens on the Contract. The motion for summary judgment of the plaintiffs-third party defendants is denied and the first-party complaint must be dismissed as the plaintiffs lack standing to bring an action under 26 U.S.C. § 7426.

### C. Motion of the United States for Summary Judgment

This court's finding that the plaintiffs lack standing to challenge the levy does not dispose of the issue of the validity of the levy, however. The cross-claim and motion for summary judgment of the United States require this court to consider the levy. The United States asserts that the levy is valid and that, pursuant to the levy, the United States may collect the unpaid liability for the fiduciary income tax for 1993 and 1994 through foreclosure upon the Contract. The United States further seeks to have this court order NFP to honor the demand for payment on the Contract by the United States as a third-party beneficiary of the Contract. Third-party defendants argue that the United States has no right to demand payment on the Contract because the United States was not due any payments until resolution of the current dispute over the tax liability for the 1991 and 1992 gift taxes.

---

9. Contrary to plaintiffs' assertions in their opposition to the United States' motion for summary judgment, section 55–80 poses the lack of *"adequate* consideration" as a factor indicative of a fraudulent transfer; only section 55–81 allows *any* consideration "deemed valuable in law." *See In re AMA Corp., supra,* 175 B.R. at 896; Va.Code Ann. §§ 55–80, 55–81 (emphasis added).

10. The court is cognizant of plaintiffs' argument that a security interest perfected with knowledge of competing claims is nonetheless a valid transaction. *See Grossmann v. Saunders,* 237 Va. 113, 376 S.E.2d 66 (1989); *First Union National Bank v. Craun,* 853 F.Supp. 209 (W.D.Va.1994). However, knowledge of competing claims is not a factor under *In re AMA Corp., supra,* 175 B.R. at 896, and this court did not consider the plaintiffs' knowledge, or lack thereof, of the United States's claims, except insofar as it goes to show an awareness that, without the Contract, the Trust would have no other assets with which to pay any tax liability.

Moreover, third-party defendants argue that their lien on the Contract is superior to that of the United States such that the levy of the United States on the Contract is improper.

█ Section 6331 permits the Secretary to collect unpaid tax liability "by levy upon all property and rights to property . . . belonging to such [non-paying] person or on which there is a lien provided in this chapter for the payment of such tax." 26 U.S.C. 6331(a) (Supp.1998). However, "a levy shall extend only to property possessed and obligations existing at the time thereof." 26 U.S.C. 6331(b) (Supp.1998). *See also United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) Thus, unless the Contract was a property interest belonging to the taxpayer Trust at the time of the levy, the United States could not levy upon the Contract. The magistrate judge found that the Contract granted only a contingent right which right was too inchoate to be a property interest upon which the United States could levy. This court agrees and holds, for the reasons explained *infra,* that the Contract was not a property interest upon which the United States could levy.

█ The determination of whether the Contract was a property interest subject to levy by the United States begins with an analysis of the nature of the Contract. Property is "that which belongs exclusively to one . . . which in no way depends upon another man's courtesy." Black's Law Dictionary 1216 (6th ed.1991). "The term is said to extend to every species of valuable right and interest." *Id.* A promise to pay money does not become such a property interest until the payment no longer depends upon a condition which has not been fulfilled. Were the Contract a negotiable instrument, a property right would come into existence either on the date on which payment was due or on the date of execution. The court finds, however, that the Contract was not a negotiable in-

strument. It was, rather, a conditional promise to pay certain unfixed amounts upon demand but only after certain other dates, events, or payments.

█ A negotiable instrument must be an unconditional promise to pay a fixed amount upon demand or at a definite time to order or bearer. Va.Code Ann. § 8.3–104, *repealed by* Acts 1992, c. 693 (stating that negotiable instruments covered by this title must be signed, unconditional promises payable on demand or a definite time to order or to bearer); Va.Code Ann. § 8.3A–104(a)(2) (" 'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money").[11] An instrument requiring reference to an outside source to determine the amount due is not negotiable. *Taylor v. Roeder,* 234 Va. 99, 360 S.E.2d 191, 194 (1987). *See also* Va.Code Ann. § 8.3–104, *repealed by* Acts 1992, c. 693; Va.Code Ann. § 8.3A–104. Clauses A, B, and C of the Contract allowed the holder to demand certain amounts of money, determined by Mr. Armstrong, Jr.'s certified public account, on or before certain dates or immediately after the death of Frank Armstrong, Jr. Although the Contract as a whole committed six million sixty five thousand three hundred dollars, the incremental payments allowed by each clause could not be determined without reference to an outside source—Frank Armstrong, Jr.'s certified public accountant. The amount of the Contract as a whole was fixed, but the incremental payments were not.

The instrument was also a conditional one, and therefore not a negotiable one. Clauses A, B, and C require NFP to pay on the Contract on or before certain dates or after Mr. Armstrong, Jr.'s death, but only "upon demand." The final clause of the Contract states that, "After the aforesaid payments, any remaining principal balance of this Contract shall be paid to the noteholder on demand." "[I] is the ordinary rule of statutory

**11.** On January 1, 1993, Title 8.3A, the Uniform Commercial Code Title—Negotiable Instruments became effective. Acts 1992, c. 693. The provisions of Title 8.3A apply, as to statutes of limitations and accrual of actions, only to those actions "accruing on or after January 1, 1993." Acts 1992, c. 693, cl. 4. Nonetheless, the current law is similar to the repealed in many ways and both are cited where relevant. *See Resolution Trust Corp. v. Maplewood Investments,* 31 F.3d 1276, 1287 n. 21 (noting no material difference between the new § 8.3A–104 and the repealed § 8.3–104)

and contract interpretation that all provisions of a Compact must be read together in a meaningful manner." *Oklahoma v. New Mexico,* 501 U.S. 221, 246, 111 S.Ct. 2281, 115 L.Ed.2d 207 (1991), *citing United States v. Utah, Nevada & California Stage Co.,* 199 U.S. 414, 423, 26 S.Ct. 69, 50 L.Ed. 251 (1905); *Worrie v. Boze,* 191 Va. 916, 62 S.E.2d 876, 880 (1951) ("In the construction of a contract the whole instrument is to be considered; not any one provision only, but all its provisions; not the words merely in which they were expressed, but their object and purpose, as disclosed by the language, by the subject matter, and the condition and relation of the parties."), *quoting Schuylkill Nav. Co. v. Moore,* 2 Whart. (Pa.) 477 (1837); *citing White v. Sayers,* 101 Va. 821, 828, 45 S.E. 747 (1903); *Epes' Adm'r v. Hardaway,* 135 Va. 80, 115 S.E. 712 (1923). *See also Clinch Valley Physicians, Inc. v. Garcia,* 243 Va. 286, 414 S.E.2d 599, 601 (1992) ("each contractual provision must be considered in the context of all other contractual provisions"). The court should also look to the intent of the maker of the contract when interpreting a contract. *See Worrie, supra,* 62 S.E.2d at 880; *Schuylkill, supra,* 2 Whart. (Pa.) 477. The court, theoretically, could read the first three clauses to create a demand instrument. However, clause D makes clear that the earlier clauses are not purely discretionary to the holder. While the time of demand is left to the holder in the first three clauses, clause D requires that the payments be made before the holder may demand the remaining principal on the Contract. Interpreting the contract as mandating payment of the taxes due because of the 1991 and 1992 gifts and redemptions of stock is also in keeping with the intent of the

parties to the contract. *See Worrie, supra,* 62 S.E.2d at 880; *Schuylkill Nav. Co., supra,* 2 Whart 477. The Contract carefully sets out how and when the tax liability for the gifts and redemptions should be determined and paid. It further sets up a mechanism by which any remaining tax liability may be paid after the death of Frank Armstrong, Jr. These mechanisms suggest that the makers of the Contract intended that it be used to pay the 1991 and 1992 tax liability created by the gifts and redemptions. The intent of the parties, as discerned from the Contract, and the language of the Contract itself, therefore lead to a conclusion that the Contract was conditional and not negotiable.

Thus, the Contract was not a negotiable instrument, but rather was "simply a contract to pay money subject to certain conditions." *See Salomonsky v. Kelly,* 232 Va. 261, 349 S.E.2d 358, 360 (1986), *citing Whitehurst v. Duffy,* 181 Va. 637, 26 S.E.2d 101 (1943); M.J. Divine and G.E. Legner, Michie's Jurisprudence § 40 (1996 & Supp. 1997). In the instant case, the condition to payment of the remaining principal on the Contract was payment of the tax liability for the 1991 and 1992 gifts and redemptions of stock. Demand of funds in order to make such payment could have been made before April 15, 1992 or April 15, 1993 (or other, presumably tax liability remission, due dates) or "immediately after" the death of Frank Armstrong, Jr. No matter when the demand is made, however, clause D still requires the payment of the tax liability for the 1991 and 1992 gifts and redemptions before the holder may demand the remaining principal of the Contract. Thus, the condition precedent of the Contract remains unmet.[12]

12. The remaining unpaid 1991 income tax liability for Frank Armstrong, Jr. derived from the redemptions of the stock (as stated by the executor of the estate in an amended return for 1991) and, thus, although some of the tax liability described in the Contract is paid, as noted by the United States in its objections to the report and recommendation, some of the tax liability resulting from the redemptions of stock still remains unpaid. If all of the required payments had been made, the only remaining condition upon the Contract would be the demand for the remainder of the funds. Were that the case, the interest of the Trustee in the Contract would be sufficient to allow a levy under section 6331, because the

Contract would then operate like a demand note in which, by analogy to a negotiable demand note, a property interest would arise on the date of creation. *See* Va.Code Ann. 8.3A–304 (Supp. 1996). *See also WAMCO, III, Ltd. v. First Piedmont Mortg.,* 856 F.Supp. 1076, 1079 (E.D.Va. 1994), Anderson, Uniform Commercial Code, § 3–108:4 (3d ed.1984); Va.Code Ann. § 8.3A–108(a) ("A promise or order is 'payable on demand' if it (i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment."). Because the Contract operated similarly to a demand note at that

■ Failure to fulfill a condition precedent in a contract simply excuses performance, Restatement (Second) of Contracts, Section 225(1) (1981), and, therefore, such a contract typically does not become due, or become a property interest, merely upon a failure to fulfill a condition. *See Morotock Ins. Co. v. Fostoria Novelty Glass Co.*, 94 Va. 361, 26 S.E. 850, 851 (1897); *Boggs v. Duncan*, 202 Va. 877, 121 S.E.2d, 359, 362 (1961); *In re LCS Homes, Inc.*, 103 B.R. 736 (Bankr. E.D.Va.1989). As the last date for payment of the 1991 and 1992 tax liability (the "immediately after the death of Frank Armstrong, Jr." period) passed, demand for payment of tax liability remained the only impediment to receipt of remainder of the funds.[13] Va.Code Ann. § 8.3–108, *repealed by* Acts 1992, c. 693. However, the demand for and payment of the tax liability did remain an impediment to receipt of the remainder of the funds and thus prevented the property interest from arising in the Trust. The court finds that the Note was not a property interest of the Trust at the time of the levy by the United States because a condition of the Contract remained unfulfilled. Therefore, the Contract could not be levied upon for the 1993 and 1994 fiduciary taxes for the Trust and it may not now be foreclosed upon in order to pay the remaining fiduciary tax liability for 1993 and 1994. To the extent that the third-party plaintiff's motion for summary judgment seeks to foreclose upon the Contract for payment of the fiduciary income taxes for the Trust for 1993 and 1994, such motion is denied.

Because the court finds the levy improper, it need not address the parties' numerous arguments regarding the superiority of various liens.

■ Having concluded that the United States may not foreclose upon the Contract to satisfy the fiduciary tax liability of the Trust, the court must now turn to whether the United States may enforce the Contract against NFP as a third-party beneficiary. As with the first-party complaint, the court must first consider the right of plaintiff to bring the instant action. *Allen v. Wright*, 468 U.S. 737, 750–51, 104 S.Ct. ·3315, 82 L.Ed.2d 556 (1984). The Contract does provide that the holder must pay the tax liability for 1991 and 1992 redemptions and gifts of stock (and any income tax liability resulting therefrom). However, although the Contract sets certain dates upon which payment must be made if demand is made, the Contract does not require such demand for payment by a certain date. Demand must only be made before the holder demands the remainder of funds under the Contract. Therefore, the United States's motion for summary judgment as the third party beneficiary of the Contract must be denied. Moreover, the third party complaint of the United States must be dismissed for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Under the third party complaint, as written, the plaintiff "can prove no set of facts that would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Had the United States sought to enforce the Trust instrument, its position would be stronger. As the court reads the Trust instrument, that instrument makes the United States the principal beneficiary of the Trust. Giving primary consideration to the intent of the settlor as expressed in the language of the instrument; *Frazer v. Millington*, 252 Va. 195, 475 S.E.2d 811, 814 (1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 99, 139 L.Ed.2d 54 (1997); *Wallace v. Wallace*, 168 Va. 216, 190 S.E. 293 (1937); and

point, the court analogizes to a negotiable demand note in order to ascertain the property interest of the noteholder. *See Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695,. 701 (3d Cir.1995) (noting that courts may analogize, with caution, non-negotiable instruments to negotiable instruments); *Iron City Savings Bank v. Isaacsen*, 158 Va. 609, 164 S.E. 520, 529 (1932) (analogizing stock certificates to negotiable notes). A demand note is a possessory interest to the noteholder from the moment of creation, because the noteholder can require

payment on the note at any time. *See also* Va. Code Ann. 8.3A–304 (Supp.1996); Va.Code Ann. § 8.3–104, *repealed by* Acts 1992, c. 693. However, such is not the case before the court.

13. The IRS levied on the Contract on June 6, 1996, almost three years after the death of the decedent. The court need not rule on the exact date when the "immediately after" period passed. At three years, it certainly had passed.

giving effect to all parts and the whole of the instrument in the analysis; *Frazer, supra,* 475 S.E.2d at 814, *citing Thomas v. Copenhaver,* 235 Va. 124, 365 S.E.2d 760, 763 (1988); the court interprets the instrument to make the United States the principal beneficiary. The Trust instrument in the instant case states:

[T]he principal of the Trust Fund shall be paid over and distributed as follows:

A. On or before April 15, 1992, the Trustee shall demand and receive from National Fruit Product Company, Incorporated on its note (1) the amount (which he shall pay to the Internal Revenue Service) determined by the Grantor's Certified Public Account (or other tax return preparer) to be needed for payment of taxes on account of 1991 cash redemption (taking into consideration Grantor's reduced income taxes thereon by reason of December, 1991 charitable contributions)....

B. On or before April 15, 1993 or other due dates, the Trustee shall demand and receive from National Fruit Product Company, Incorporated on its note (1) the amount (which he shall pay to the Internal Revenue Service) determined by the Grantor's Certified Public Account (or other tax return preparer) to be needed for payment of taxes on account of 1992 cash redemption (taking into consideration Grantor's reduced income taxes thereon by reason of December, 1991 charitable contributions carried over to 1992)....

C. Notwithstanding the deadlines established in A. and B. above, the Trustee shall, immediately after the Grantor's death (or immediately prior to the Grantor's death if that is reasonably possible) receive from National Fruit Product Company, Incorporated on its note, and shall pay to the Internal Revenue Service, amounts reasonably approximated as needed for payment of taxes on account of such redemptions and gifts.

The Trust instrument provides further that the income be paid over to the income beneficiary, but only after "until all of the tax liabilities [described *supra* ] shall have been satisfied." The language of the instrument, unlike that of the Contract, leaves no room

for discretion of the Trustee. The tax liability must be paid on or before the yearly tax deadline or "immediately after the Grantor's death." The instrument does provide for a hierarchy of payments in the event of insufficient funds, but such hierarchy does not change the basic command to pay the tax liability. Moreover, although the instrument gives the Trustee complete discretion allowed by Virginia law, such discretion is limited still by the express commands set out *supra.* See *City of Owensboro v. Owensboro Waterworks Company,* 243 U.S. 166, 184, 37 S.Ct. 322, 61 L.Ed. 650 (1917) ("but specific should always control general provisions when they conflict"). Finally, the instrument provides that, after all of the payments required for tax liability have been made, the remainder of the trust funds shall be distributed to the Grantor or his estate. Again, that provision does not change the earlier commands or the principal beneficiary; it simply designates the remainder beneficiaries. A conclusion that the United States is the principal beneficiary of the Trust is consonant with case law in this area. See *United States v. Phoenix Indemnity Co.,* 231 F.2d 573, 574 (4th Cir. 1956) (holding United States entitled to recovery as third-party beneficiary of indemnity contract in which surety guaranteed performance of all covenants, which covenants included promises to pay tax liabilities); *United States v. Wood,* 877 F.2d 453 (6th Cir.1989) (interpreting settlement agreement, by its language and maker's intent, to designate United States as third-party creditor beneficiary able to enforce settlement); *United States v. Industrial Crane and Mfg. Co.,* 492 F.2d 772, 774 (5th Cir.1974) (holding United States to be third-party beneficiary of contract in which buyer assumed tax liabilities of seller but retained defenses against United States as well); *United States v. United Services Automobile Ass'n,* 431 F.2d 735, 737 (5th Cir.1970) (holding, based on the language of the contract, the United States to be the third-party beneficiary of automobile insurance contract); *Karpe v. United States,* 167 Ct.Cl. 280, 335 F.2d 454 (Cl.Ct. 1964) (holding United States to be beneficiary of settlement agreement in which husband promised to pay any tax liability of ex-wife; also stating "The government's right as third

party beneficiary to collect another's taxes from an individual promising to pay them has been recognized in a number of occasions. *E.g., United States v. Phoenix Indemnity Co.,* 2[31] F.2d 573 (4th Cir.1956); *United States v. Scott,* 167 F.2d 301 (8th Cir.1948); *American Equitable Assurance Co. v. Helvering,* 68 F.2d 46 (2d Cir.1933)"); *Rooney v. United States,* 434 F.Supp. 766, 772 (N.D.Cal.1977) (holding United States to be beneficiary of indemnity contract with joint venture).

Because the United States is the principal beneficiary of the Trust, it could bring an action in equity against the trustee to recover funds held by the trustee for the benefit of the cestui que trust as authorized by the trust instrument. 19 Michie's Jurisprudence of Virginia and West Virginia, Trusts, § 120 (1991); *Mid–Atlantic Supply v. Three Rivers Aluminum Co.,* 790 F.2d 1121, 1126 (4th Cir.1986) (citations omitted); *Davis v. United States,* 495 U.S. 472, 483, 110 S.Ct. 2014, 109 L.Ed.2d 457 (1990) (citation omitted) ("A defining characteristic of a trust arrangement is that the beneficiary has the legal power to enforce the trustee's duty to comply with the terms of the trust."). However, the third party complaint of the United States did not seek to enforce the Trust. It sought only to foreclose upon the Contract under the lien and to enforce the Contract as third party beneficiary. It can do neither, and the court must, therefore, deny the motions for summary judgment of both the plaintiffs and the third party plaintiff and dismiss the complaints of both the plaintiffs and the third party plaintiff.

An appropriate order this day shall issue.